IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22–cv–01935–RMR–MDB

COLTON WOLFE,

 Plaintiff,

v.

DANIEL CALHOUN, et al.,

 Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Maritza Dominguez Braswell**

 *Pro se* Plaintiff Colton Wolfe alleges Fremont County officials violated his state and federal constitutional rights after he formed a church centered on the healing power of cannabis. (["Complaint"], Doc. No. 68.) He filed this lawsuit against Fremont County and nine Fremont County officials ("County Defendants"),[1] principally alleging County Defendants violated his right to religious freedom and his right to be free from unreasonable searches and seizures. (*See generally id.*) Plaintiff also sues U.S. Bank. (*Id.* at 58.) He alleges U.S. Bank and various County Defendants conspired to violate the Controlled Substances Act and formed an associated-in-fact enterprise to launder money from the sale of controlled substances in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (*Id.* at 35–48, 58–62.) County Defendants and U.S. Bank move separately to dismiss Plaintiff's claims under Rule 12(b)(6). (["Motions"], Doc. Nos. 70 & 75.) Plaintiff opposes both Motions. (["Responses"], Doc. Nos. 81 & 86.)

---

[1] The individual County Defendants include Officers Allen Cooper and Daniel Calhoun; Code Enforcement Officer Daniel Victoria; Fremont County Commissioners Debbie Bell, Dwayne McFall, and Kevin Grantham; Assistant City Manager Sunny Bryant; former District Attorney Kaitlyn Turner; and former Deputy District Attorney Aaron Pembleton. (*Id.* at 4.) Plaintiff sues all nine Defendants in their official and personal capacities. (*Id.*)

1

Defendants have replied. (["Replies"], Doc. Nos. 85 & 87.) Having considered Plaintiff's allegations, the parties' positions, and relevant legal authority, the Court respectfully **recommends GRANTING** both Motions.

## SUMMARY FOR PRO SE PLAINTIFF

The Court recommends dismissing all claims. With respect to the First Amendment free exercise claim, the law at issue is a religiously neutral and generally applicable law that incidentally burdened your religious practice. Thus, so long as the law is reasonably related to a legitimate government interest—and here it is—application of that law will not amount to a constitutional violation. With respect to the First Amendment retaliation claim, the Complaint does not allege sufficient facts to establish that the government's actions were substantially motivated as a response to your exercise of constitutionally protected conduct. As to the Fourth Amendment claims, the Court recommends dismissing the unlawful search claim because the magistrate judge's decision to issue the search warrant would not have been different had the affiant disclosed that the property to be searched was religious in nature. The Court also recommends dismissing the false arrest claim because this is not a case where the affidavit in support of the arrest warrant was wholly unsupported by probable cause. Additionally, the Complaint does not allege enough facts to connect Defendant Cooper to the false arrest claim. The Court also recommends dismissing the claims against the County itself because the supporting allegations are conclusory and insufficient. The RICO claims are similarly unsupported because the allegations in the Complaint are insufficient to establish the predicate acts of racketeering. And finally, because the Court recommends dismissing all federal law claims, the state law claims should also be dismissed for lack of subject matter jurisdiction. If you disagree with this Recommendation, you can object within fourteen (14) days. This is only a high-level summary of the Court's decision. The entire Recommendation is set forth below.

## BACKGROUND

Plaintiff Colton Wolfe alleges it is his sincerely held religious belief that cannabis heals

2

his son, Isaiah, who suffers from severe epilepsy. (Doc. No. 68 at 5, 8–9.)[2] He alleges that in 2019, he began processing and praying over "religious [cannabis] plants." (*Id.* at 5–9.) Plaintiff also alleges that around the same time, he formed a church centered on the healing power of cannabis, particularly for the "special needs community." (*Id.* at 7–9, 67.) To house that church, Plaintiff rented property from his father, Michelle, in Fremont County. (*Id.* at 5.)

Plaintiff alleges Fremont County officials have repeatedly violated his rights ever since. Specifically, and relevant to the claims at issue here, Plaintiff alleges that on July 30, 2020, Code Enforcement Officer Daniel Victoria emailed Detective Daniel Calhoun pictures of an allegedly illegal "marijuana grow" located at a property Plaintiff was leasing from his father, Michelle. (*Id.* at 25.) One week later, on August 6, 2020, Defendant Calhoun executed a search warrant at the property. (*Id.*) Plaintiff alleges Defendant Calhoun and his team either destroyed or seized Plaintiff's religious property (*id.* at 8, 25, 35, 51, 54, 57–58), which "put [Plaintiff] in financial ruin" and "caused Isaiah's health to deteriorate." (*Id.* at 8.)

A few months after the seizure, on November 16, 2020, Defendant Calhoun submitted an affidavit in support of a warrant for Plaintiff's arrest. (*See* Doc. No. 77 at 2-6.) The affidavit referenced statements made by Fremont County Code Enforcement about the "illegal grow," as well as statements by Plaintiff's father, Michelle, indicating Plaintiff and his father had an arrangement whereby Plaintiff would sell the marijuana plants and give his father 25% of the profits. (*Id.* at 4.) The arrest warrant issued, (Doc. No. 77 at 8), and Plaintiff was charged with possession and cultivation of marijuana in violation of C.R.S. § 18-18-406. (*Id.*) Plaintiff reported to the El Paso County Jail, was taken into custody, and eventually bonded out. (Doc. No. 68 at 56.) Plaintiff alleges the charges against him were eventually dropped. (*Id.* at 31–32.)

Plaintiff filed this lawsuit in August 2022. (Doc. No. 1.) He alleges violations of his

---

[2] Plaintiff alleges Isaiah's doctors have issued him a medical marijuana card to treat his medical condition. (Doc. No 68 at 7–8.) Plaintiff's father, Michelle, also uses marijuana to treat his several forms of cancer. (*Id.* at 26–27.) Michelle's doctors approved his growing ninety-nine cannabis plants to generate the marijuana needed to treat his cancer. (*Id.* (attaching Physician Certification).)

rights under the United States Constitution, including his First Amendment right to free exercise of religion (claim 1) (Doc. No. 68 at 50–52); retaliation in violation of the First Amendment (claim 2) (*id.* at 52–55); and unlawful seizure of his person and property under the Fourth Amendment (claims 3 & 4) (*id.* at 55–58). Plaintiff's fifth claim alleges U.S. Bank and various County Defendants conspired to violate the Controlled Substances Act and formed an associated-in-fact enterprise to launder money from the sale of controlled substances in violation of RICO. (*Id.* at 58–62.) Plaintiff also brings claims under Colorado's Enhance Law Enforcement Integrity Act, alleging Officers Calhoun and Cooper violated his rights under Article II of the Colorado Constitution. (*Id.* at 63–66 (citing C.R.S. § 13-21-131).) Additionally, Plaintiff alleges Fremont County is liable, making *Monell v. Department of Social Services,* applicable to his claims. (*Id.* at 52, 54, 57–58); 436 U.S. 658 (1978). As noted, County Defendants and U.S. Bank move separately to dismiss Plaintiff's claims under Rule 12(b)(6). (*See* Doc. Nos. 70 & 75.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint in the light most favorable to the plaintiff, *Erickson v. Pardus*, 551

4

U.S. 89, 93–94 (2007).

Plaintiff is proceeding *pro se*. The Court thus "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Still, although a *pro se* complaint is generally entitled to liberal construction, the plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002). A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (explaining that the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

## ANALYSIS

The Court addresses Plaintiff's claims in the following order: (I) Plaintiff's First Amendment claims for free exercise and retaliation; (II) Plaintiff's Fourth Amendment claims for unlawful seizure of his person and property; (III) Plaintiff's *Monell* claims; (IV) Plaintiff's RICO claim against County Defendants and U.S. Bank; and (V) Plaintiff's claims against Officers Calhoun and Cooper under Colorado's Enhance Law Enforcement Integrity Act.

### I.  PLAINTIFF'S FIRST AMENDMENT CLAIMS

Plaintiff brings First Amendment claims against Code Enforcement Officer Daniel Victoria, former District Attorney Kaitlyn Turner, former Deputy District Attorney Aaron Pembleton, Detective Daniel Calhoun, Officer Allen Cooper, and Fremont County. (Doc. No. 68 at 50–55.) Plaintiff claims the County Defendants violated his rights under the First Amendment's Free Exercise Clause (*id.* at 32–35, 50–52) and retaliated against him for

exercising his First Amendment rights (*id.* at 52–55). The thrust of both the free exercise claims and the retaliation claims is that by arresting him and charging him, the County Defendants interfered with Plaintiff's right to form his church and grow his "healing plants." (*Id.* at 32–35, 50–55.)

At the outset, the Court recommends dismissing former District Attorney Kaitlyn Turner and former Deputy District Attorney Aaron Pembleton in their personal and official capacities with prejudice. Plaintiff sues both Defendants for filing "frivolous" charges against him. (*See, e.g.*, Doc. No. 68 at 51.) But prosecutors are "absolutely immune [from individual-capacity lawsuits] when functioning 'within the scope of [their] duties in initiating and pursuing a criminal prosecution.'" *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1209 (10th Cir. 2022), *cert. denied sub nom. San Juan Cnty., Utah v. Chilcoat*, 143 S. Ct. 1748 (2023) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). And "sovereign immunity bars damages claims against state actors in their official capacity" unless the plaintiff alleges "an ongoing violation of federal law" or "seeks relief properly characterized as prospective." *Id.* at 1213–14 (citations omitted). Plaintiff makes neither allegation here.

As to the remaining free exercise and retaliation claims, the Court addresses each in turn.

### A.  Plaintiff's Free Exercise Claim

The First Amendment's Free Exercise Clause, applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. When a religiously neutral and generally applicable law incidentally burdens free exercise rights, courts sustain the law against constitutional challenge if it is rationally related to a legitimate governmental interest. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021) (citing *Emp. Div. v. Smith*, 494 U.S. 872, 878–82 (1990)). When a law is not neutral or generally applicable, courts sustain it only if it is narrowly tailored to achieve a compelling governmental interest. *Id.* at 1881 (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)).

6

Here, Plaintiff was arrested and charged under various provisions of C.R.S. § 18-18-406, which concerns "[o]ffenses relating to marijuana and marijuana concentrate." (Doc. No. 68 at 28–29.) Plaintiff neither alleges nor argues that this law seeks to regulate religious beliefs. Rather, Plaintiff appears to challenge the application of a religiously neutral and generally applicable law merely because it incidentally burdens his religious practice. Thus, the question is whether the law at issue is rationally related to a legitimate governmental interest. The Court finds that it is. *Cf. People v. Torline*, 2020 COA 160, 487 P.3d 1284 (noting C.R.S. § 18-18-406 "advances the legitimate interest of public health and safety and is rationally related to that end" (Colo. Const. art. XVIII)). Moreover, and as the County Defendants point out, "[t]he right of free exercise does not relieve an individual of the obligation to comply with a "valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." (Doc. No. 75 at 6 (quoting *United States v. Lee*, 455 U.S. 252, 263, n.3 (1982)).) The Court thus recommends dismissing Plaintiff's Free Exercise claim because the facts as pleaded do not demonstrate a violation of the First Amendment's Free Exercise Clause. *Cf. United States v. Meyers*, 95 F.3d 1475, 1480–81 (10th Cir. 1996) (rejecting "Reverend of the Church of Marijuana's" Free Exercise claim that federal statutes unduly burdened his sincere religious belief that "his religion commands him to use, possess, and distribute marijuana for the benefit of mankind and the planet earth.").

### B. Plaintiff's Retaliation Claim

To state a First Amendment retaliation claim, Plaintiff must plausibly allege the following elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citation omitted).

7

Here, the County Defendants argue that "Plaintiff fails to plausibly allege that Defendants' actions were motivated by constitutionally protected activity, such as Plaintiff's religious beliefs." (Doc. No. 75 at 7 n.3.) Although the County Defendants do not expand on that argument very much in their motion, the Court agrees. A key element of a retaliation claim is that defendant's action was "substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct[,]" *Shero*, 510 F.3d at 1203, but the closest Plaintiff comes to alleging "substantial motivation" is a handful of statements that indicate the County Defendants' actions must have been retaliatory because at one point Plaintiff told the County his property was a religious sanctuary. (*See, e.g.*, Doc. No. 68 at 24, 35.) That is insufficient. Without the alleged facts to satisfy that element, the retaliation claim fails as a matter of law and the Court recommends dismissing the First Amendment retaliation claim as well.

## II.  FOURTH AMENDMENT CLAIMS

As noted above, Plaintiff brings Fourth Amendment claims for unlawful seizure of his person[3] and property in connection with a search warrant and an arrest warrant. (*See id.* at 55–58.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When a search or seizure is conducted pursuant to a warrant, "the fact that a neutral magistrate [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Still, there are exceptions. *See United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000); *Walker v. Park Cnty. Sheriff's Off.*, No. 21-1119, 2022 WL 538121, at *3 (10th Cir. Feb. 23, 2022). A warrant-based search or seizure is not reasonable if (1) "the issuing magistrate [judge] was

---

[3] Specifically, Plaintiff was seized when he turned himself in. (*See* Doc. No. 68 at 56.) His "'surrender to the State's show of authority' by reporting to police after learning of an outstanding warrant 'constitute[s] a seizure for purposes of the Fourth Amendment.'" *Cummisky v. Mines*, 248 Fed. App'x. 962, 965 n.1 (10th Cir. 2007) (unpublished) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

8

misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth," or (2) "the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Danhauer*, 229 F.3d at 1007 (citation omitted). The Court first considers these exceptions as they may apply to the search warrant, then it turns to the arrest warrant.

Plaintiff alleges Defendant Calhoun misled the magistrate judge in his application for a search warrant because he purposely hid "that the location [to be searched] was a church" and "the cannabis was grown for religious reasons." (Doc. No. 86 at 14–15.) But Plaintiff points to no law exempting churches or religious practitioners from Colorado's regulation of outdoor marijuana cultivation, and the Court is aware of none. In other words, Plaintiff does not plausibly allege Defendant Calhoun's alleged omissions made a difference. The Court thus recommends dismissing Plaintiff's unlawful search claim.

As to the arrest warrant, Plaintiff principally alleges Defendants had no information connecting him to the marijuana grow before he was taken into custody. (*See* Doc. No. 68 at 27–28 ("There was absolutely no evidence that I was involved in any way with the grow. There was no paperwork that showed[] I was a resident at the grow, no utilities, no bank statements, absolutely nothing attaching me to the location that was [r]aided.").) Read liberally, Plaintiff's allegation amounts to a claim that the affidavit supporting the arrest warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Danhauer*, 229 F.3d at 1007.

The County Defendants' argument for dismissal is that Plaintiff admits in his Complaint to owning the marijuana plants. (*See* Doc. No. 75 at 7–8 (Plaintiff's claim "that there was no evidence he was involved with the grow . . . is contrary to the rest of the allegations contained in the Complaint.").) But it is "axiomatic that hindsight may not be employed in determining whether a prior arrest or search was made upon probable cause." § 3.2(d) Information to be Considered, 2 Search & Seizure § 3.2(d) (6th ed.); *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 745 (7th Cir. 2003) ("The only facts relevant to determining whether probable cause

9

existed are those known to the police when they apply for a warrant."); *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006) ("Subsequent evidence of guilt cannot validate the probable cause determination."); *Peet v. City of Detroit*, 502 F.3d 557, 565 (6th Cir. 2007) ("The Supreme Court has held that probable cause determinations must be evaluated according to the information the police knew at the moment of the challenged conduct, not information learned for the first time afterwards." (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964))). Thus, the County Defendants' submission that Plaintiff's Complaint retroactively imbued the affidavit with probable cause is insufficient.

The County Defendants also attach the arrest warrant and supporting affidavit to their Motion, perhaps implicitly inviting the Court to independently analyze the affidavit's sufficiency.[4] On review of the affidavit, the Court cannot accept Plaintiff's contention[5] that "[t]here was absolutely no evidence that [Plaintiff] was involved in any way with the grow." (Doc. No. 68 at 27.) The affidavit includes at least some evidence connecting Plaintiff to the marijuana plants at issue. (Doc. No. 77 at 3-4.) First, it states Plaintiff was "paying [his father] to grow [the marijuana plants]." (*Id.* at 4.) And although his father eventually changed his story about Plaintiff's involvement, at one point he indicated that Plaintiff's plan was "to sale [sic] the marijuana plants and give [his father] 25% of the profit." (*Id.*) Apparently, Plaintiff's prior attempts to "to grow marijuana," were frustrated by "County Code Enforcement…because [he

---

[4] Though not attached to the Complaint, the arrest warrant and supporting affidavit are central to Plaintiff's claims, and Plaintiff has referenced them and does not dispute their authenticity. Thus, the Court will consider these filings in its analysis. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) ("The district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.").

[5] Though Plaintiff proceeds *pro se*, and thus the Court construes his filings and statements liberally, the Court will not accept assertions that are blatantly incorrect or otherwise not supported. *See Iqbal*, 556 U.S at 678 ("A pleading that tenders 'naked assertion[s]' devoid of 'further factual enhancement [is not entitled to a presumption of truth.]'"); *id.* at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

and his father] did not have permits." (*Id.*) The affidavit also indicates that during the execution of the search warrant, Plaintiff "told dispatch that he is going to go to the property and start shooting people." (*Id.*) The affidavit also includes an email from Fremont County Code Enforcement Officer Daniel Victoria, which states that the subject marijuana plants were part of an "illegal marijuana grow" that is "operated by [Plaintiff][,]" and that "[t]he scale of this grow is significantly larger than last year." (*Id.* at 3.)

Said another way, the Court has closely reviewed the affidavit in support of the arrest warrant and based on that review it cannot say the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Danhauer*, 229 F.3d at 1007. Plaintiff may ultimately be right that he and his father "were breaking no laws[,]" and that his "father was allowed to grow 99 plants[,]" (Doc. No. 68 at 26-27), but those defenses do not negate or otherwise dispel the probable cause for his arrest. *See generally Call v. Badgley*, 254 F. Supp. 3d 1051 (N.D. Cal. 2017). Therefore, the Court recommends dismissing Plaintiff's unlawful arrest claim.[6]

### III.  PLAINTIFF'S *MONELL* CLAIMS

Plaintiff alleges Fremont County is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) for each of the foregoing violations. (*See* Doc. No. 68 at 52, 54, 57–58.) But the County Defendants correctly observe that Plaintiff includes only a formulaic recitation of the elements of a *Monell* claim in support. (*See* Doc. No. 75 at 18–19 (quoting Doc. No. 68 at 52, 54, 57, 58.) For each of the First Amendment claims, Plaintiff attempts to invoke *Monell* by stating, "[t]he acts and omissions of Defendants were engaged in pursuant to the customs, policies, and practices of Defendant Fremont County, which encourages, condones, tolerates, and ratifies [the

---

[6] As a further basis for dismissal, the Court agrees with the County Defendants that "Plaintiff does not allege that Defendant Cooper was involved in the arrest warrant." (Doc. No. 75 at 10.) Defendant Calhoun was the affiant for the arrest warrant. (*See* Doc. No. 77 at 2, Doc. No. 77-1 at 6.) But Plaintiff does not explain what role Defendant Cooper played in causing the arrest. Although Tenth Circuit law does not require an allegation of direct participation in the constitutional violation, *see Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010), Plaintiff cannot survive a motion to dismiss without pleading at least some involvement by Defendant Cooper.

constitutional violations]." (Doc. No. 68 at 52, 54.) For each of the Fourth Amendment claims, Plaintiff similarly recites "Defendants were engaged in these acts pursuant to the formal or informal custom, policy and practice of Fremont County, which encourages, condones, tolerates, and ratifies [the constitutional violations]." (*Id.* at 57, 58.) Because "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim under Rule 12(b)(6), *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), the Court recommends dismissing Plaintiff's *Monell* claims.

## IV. RICO CLAIM

Plaintiff brings his RICO claim against Defendants Victoria, Calhoun, Cooper, Bryant, Bell, McFall, Grantham, and U.S. Bank. (*See* Doc. No. 68 at 58.) Plaintiff appears to allege Defendants formed an associated-in-fact enterprise and conspired to license medical marijuana businesses and launder money from the sale of controlled substances in violation of the Controlled Substances Act. (*Id.* at 35–48, 58–62.) He alleges injury in connection with his refusal to obtain a permit and pay a fee. (*Id.* at 42.)

RICO creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation" of its prohibitions. 18 U.S.C. § 1964(c). "To maintain a cause of action under § 1964(c), a plaintiff must plead and ultimately prove: (1) that the defendant violated § 1962; (2) that the plaintiff's business or property was injured; and (3) that the defendant's violation is the cause of that injury." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017) (citations omitted). A "plaintiff asserting a § 1964(c) claim for a violation of § 1962(c) must plausibly allege that the defendants each (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* at 882 (quotation marks and citations omitted). To show such a pattern, RICO requires at least two predicate criminal racketeering acts over a ten-year period. *See* 18 U.S.C. § 1961(5). These predicate offenses are acts punishable under certain state and federal criminal laws, including "drug-related activity that is 'punishable' under federal law." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 330 (2016)

(quoting 18 U.S.C. § 1961(1)(D)).

U.S. Bank moves to dismiss the RICO claim, and the Court agrees with its arguments. (*See generally* Doc. No. 70 (submitting four arguments for dismissing Plaintiff's RICO claims; addressing money laundering and conspiracy allegations).) As U.S. Bank points out, Plaintiff "hinges his RICO claim solely on the fact that the County Defendants repaid debt held by U.S. Bank in 2018." (Doc. No. 70 at 7.) Plaintiff does not plausibly allege that U.S. Bank and the County Defendants shared a "common purpose" or functioned as a continuing unit as required to allege an associated-in-fact enterprise. *See United States v. Hutchinson*, 573 F.3d 1011, 1022 (10th Cir. 2009). Nor does Plaintiff plausibly allege U.S. Bank "knew about or agreed to facilitate the commission of acts sufficient to establish a [RICO] violation," as he must to plausibly allege a RICO conspiracy. *United States v. Smith*, 413 F.3d 1253, 1265 (10th Cir. 2005). Moreover, under Plaintiff's logic, every entity that receives payment from the County would be liable under RICO for money laundering and/or conspiracy. The Court is unwilling to stretch liability so far. The Court recommends dismissing Plaintiff's RICO claim against U.S. Bank.

The County Defendants also move to dismiss the RICO claims, and although their arguments for dismissal are not as well-developed as the arguments set forth in U.S. Bank's motion,[7] the Court agrees the RICO claims against the County Defendants should also be dismissed. Plaintiff makes several conclusory allegations about the County Defendants' "racketeering activity," (*see e.g.,* Doc. No. 68 at 59), but the acts he references do not amount to racketeering.

RICO defines racketeering as an act that violates state and federal law, for example mail

---

[7] The County Defendants broadly describe Plaintiff's claim as alleging "that Defendants committed the predicate act of money laundering" and note that "a similar claim was addressed and dismissed by" an unpublished, out-of-circuit district court case. (*See* Doc. No. 75 at 15 (citing *Ruggles v. Ige*, No. 20-cv-00247, 2020 WL 5636898 (D. Haw. Sept. 21, 2020)). Additionally, in a footnote, the County Defendants submit that "[e]ven assuming that Plaintiff's RICO claim satisfied the requisite elements, County Defendants would be entitled to qualified immunity." (Doc. No. 75 at 15 n.5.)

fraud, wire fraud, bank fraud. *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1102 (10th Cir. 1993). Here, the alleged racketeering acts include, "collaborating to enforce registration of Medial Marijana related businesses," conducting an "illegal licensing scheme," and engaging in "efforts to license medical marijuana businesses and thereby engage in an ongoing pattern of racketeering activity." (Doc. No. 68 at 58-60). Plaintiff does not allege how the County Defendants' licensing, regulation, and enforcement, is illegal, nor can the Court draw any reasonable inferences of illegality.

Plaintiff's allegation of money laundering fares no better. As Defendants' note:

> [t]he money laundering statute makes is unlawful for any person, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity," to conduct (or attempt to conduct) "such a financial transaction which in fact involves the proceeds of specified unlawful activity" with either the intent to promote the carrying on of specified unlawful activity or knowing that the transaction is designed to "conceal or disguise the nature, the location, the course, the ownership, or the control of the proceeds of specified unlawful activity."

(Doc. No. 75 at 14 (citing 18 U.S.C. § 1956).) And while the Complaint includes conclusory allegations of money laundering, it does not allege facts to support the requisite intent to promote an unlawful activity, or conceal the nature, location, course, ownership or control of the proceeds associated with the unlawful activity. Thus, and even applying a liberal standard to Plaintiff's pleading, and drawing all reasonable inferences in his favor, the Complaint does not plead—with particularity—the requisite predicate acts of racketeering. *See* Fed. R. Civ. P. 9(b); *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982 989 (10th Cir. 1992).

## V.   STATE LAW CLAIMS

Plaintiff brings three claims under the Enhance Law Enforcement Integrity Act, Colo. Rev. Stat. § 13-21-131, for various violations of his rights under Article Two of the Colorado Constitution. (*See* Doc. No. 68 at 63–66.) Specifically, he alleges the County Defendants violated his inalienable rights under Section Three, his right to religious freedom under Section Four, and his right to security of person and property under Section Seven. (*Id.*) The County

Defendants argue these claims should be dismissed because "Plaintiff does not allege any facts in addition to those alleged in support of his federal constitutional claims[.]" (Doc. No. 75 at 16.) The County Defendants have not fully developed their arguments, which is problematic because—at least with respect to the First Amendment claims—the Court's analysis of facts underlying a federal law claim, can be different from its analysis of facts underlying a state law claim. *See Conrad v. City & Cnty. of Denver*, 656 P.2d 662, 667 (Colo. 1982) ("While we have stated that Article II, Section 4, 'embod[ies] the same values of free exercise and governmental non-involvement secured by the religious clauses of the First Amendment" and "echoes the principle of constitutional neutrality underscoring the First Amendment,'. . . determination of the First Amendment challenge will not necessarily be dispositive of the state constitutional question. Resolution of issues under Article II, Section 4, ultimately requires analysis of the text and purpose of that section.'") (quoting *Americans United for Separation of Church and State Fund, Inc. v. State*, 648 P.2d 1072, 1081, 1082 (Colo.1982)); *Eddie's Leaf Spring Shop & Towing LLC v. Colorado Pub. Utilities Comm'n of State*, 218 P.3d 326, 333 (Colo. 2009) ("The Colorado and U.S. Constitutions are generally coextensive with regard to warrantless searches and seizures.").

Nevertheless, the Court recommends dismissal of the state law claims because it has recommended dismissal of the federal law claims to which they are supplemental. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) ("The Supreme Court has encouraged the practice of dismissing state claims . . . when the federal claims to which they are supplemental have dropped out before trial.") (collecting cases); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

## CONCLUSION

For the reasons set forth above, the Court **recommends GRANTING** both Motions to

Dismiss in full.[8]

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the district judge and will result in a waiver of the right to appeal from a judgment of the district court based on the magistrate judge's proposed findings and recommendations. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the

---

[8] The Court notes that the Complaint includes allegations that suggest Plaintiff sought to bring a malicious prosecution claim and a due process claim. (*See, e.g.*, Doc. No. 68 at 28–32 (where Plaintiff includes a header called "Malicious Prosecution and False Arrest," states, "[t]hese are the Frivolous charges Defendants hit me with," and proceeds to list charges and recite the elements of such a claim); *see also id.* at 6, 35, 51, 54, 58, 66 (alleging County Defendants destroyed Plaintiff's plants and related materials while executing the search warrant).) The Court has serious doubts about whether either claim would be viable because the elements of those claims overlap with certain elements of the claims analyzed herein. For example, to prove a malicious prosecution claim, a plaintiff must establish a lack of probable cause for the charge, and here, the Court has already determined there was probable cause for the arrest. However, because the parties' briefing does not address those claims, and because the claims are not specifically enumerated or supported by separate specific facts in the Complaint, the Court does not consider them here.

district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (noting firm waiver rule does not apply when the interests of justice require review).

Dated August 29, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge